IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-00102-RBJ

MARK DAVID BURGER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

ORDER

The Court here reviews the Commissioner's denial of Mark D. Burger's application for disability benefits under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on July 3, 2012. [Docket #11.] The Court apologizes to both parties for its delay in resolving this case.

**Facts**

Procedural Background

On August 29, 2008, Mr. Burger filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income. R. at 13. In both applications Mr. Burger alleged a disability onset date of December 2, 2002. *Id.* Mr. Burger was last insured through December 31, 2008. *Id.*

Mr. Burger's applications were initially denied on December 16, 2008. *Id.* He then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 28,

2010, with Mr. Burger and his attorney appearing in Denver, Colorado. *Id.* Martin Rauer, a vocational expert ("VE"), as well as Marita Burger, Mr. Burger's wife, also appeared and testified at the hearing. *Id.*

On January 24, 2011, ALJ James A. Wendland issued a decision denying Mr. Burger social security benefits. R. at 13–21. Mr. Burger pursued an internal appeal and provided additional medical reports and legal briefing. R. at 1–5. The Appeals Council denied his request to review the ALJ's decision on November 21, 2011. R. at 1. The present case was filed on January 13, 2012.

<u>Mr. Burger's Relevant Medical History</u>

Mr. Burger was born on July 29, 1960, and was 48 years old on the date last insured in 2008. R. at 20. Mr. Burger had previously been trained and worked as an architect after graduating from high school. R. at 154–55. He, however, was unable to maintain jobs because he would "uncontrollably self-'determine' that the way the job was done was 'bad'" and would "correct" the way any job should have been performed. [#9] at 14. *See, e.g.*, R. at 154–55. As a result, Mr. Burger was unable to maintain long-term employment and attempted holding various "menial" jobs until he ultimately stopped working on his alleged disability onset date. *Id.*

Prior to filing for disability benefits, Mr. Burger's medical records are sparse. He visited Denver Internal Medicine with various routine medical issues, and his records from August 26, 2002 to September 15, 2008, reflect complaints of depression and obsessive-compulsive disorder. R. at 250–76. Mr. Burger was reported as reacting well to anti-depression medication, R. at 296, and the last record from Denver Internal Medicine on November 9, 2009, did not address any mental health issues, R. at 303. It is unclear from the records whether the source or sources of the reports had any mental health expertise.

As a result of his filing for disability benefits, Mr. Burger was sent to Dr. Aimee G. Henley for a consultative psychological evaluation on November 18, 2008. R. at 277–81. Dr. Henley opined that Mr. Burger displayed no cognitive deficits in the formal mental status examination, but that he "may react to changes or stress in the workplace with increased anxiety, rigidity and perhaps anger." R. at 280.

In December 2008, Dr. James D. Dyde performed a Psychiatric Review Technique Form ("PRTF") and completed a mental RFC assessment. R. at 242–48. Dr. Dyde found that Mr. Burger was not significantly limited in the majority of mental functioning areas, and no more than moderately limited in the remainder areas. R. at 246–47. Dr. Dyde concluded, "This 48 yo man retains the ability to do work that is fairly concrete and simple that would involve up to 3 mos for acquiring needed skills and information. Needs limited contact with the general public, with supervisors and coworkers, can otherwise sustain SGA [substantial gainful activity]." R. at 248.

On July 1, 2009, Dr. David Benson also conducted a consultative psychological evaluation. R. at 283–94. Dr. Benson concluded that due to Mr. Burger's social characteristics and obsessive-compulsive tendencies, that he "faces multiple barriers to effective participation in the work world over time." R. at 291–92. Dr. Benson also noted that the "worst thing that could happen to [Mr. Burger] is for him to continue to be unemployed," and that Mr. Burger has "the potential for finding his way to a line of work where he could be self-supporting." R. at 294.

Dr. Marita Keeling, a psychiatrist, evaluated Mr. Burger in January 2010. R. at 320–24. Dr. Keeling concluded that Mr. Burger suffered from "chronic dysthymia with superimposed major depressive episodes," as well as "obsessive-compulsive personality disorder and narcissistic personality disorder." R. at 323. Thus, she opined that, due to Mr. Burger's severe

interpersonal problems, "it will be extremely difficult for him to successfully negotiate an employment interview and even if he were to get a position I do not think he will be able to keep one." *Id.*

In May 2010, Dr. Pock, also a psychiatrist, began treating Mr. Burger. R. at 305–19. Dr. Pock diagnosed Mr. Burger as suffering from major depression and as having a Global Assessment of Functioning Level ("GAF") of 40, equating to being unable to work. R. at 310. Dr. Pock opined on June 6, 2010, after seeing Mr. Burger six more times, that Mr. Burger "becomes overwhelmed with tasks and people[;] withdraws due to overwhelming anxiety[;] [has] repeated inability to cope with people, stress or own (inner) demands for perfection (as seen in repeated situations at work and socially)." R. at 314.

ALJ's Decision

The ALJ followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4) to determine that Mr. Burger is not disabled. At step one, the ALJ found that Mr. Burger had not engaged in substantial gainful activity since the alleged onset date on January 1, 2007, through his date last insured on December 31, 2008. R. at 15. At step two, the ALJ found that Mr. Burger's severe impairments included "major depressive disorder and obsessive-compulsive disorder." *Id*.

At step three, the ALJ determined that the Mr. Burger "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." *Id*. The ALJ found that Mr. Burger's mental impairments did not result in at least two of the paragraph B criteria. Specifically, the ALJ found that Mr. Burger "is no more than moderately limited in his activities of daily living, social functioning and ability to maintain concentration, persistence and pace," and that there were no

documented episodes of decompensation. *Id.* The ALJ cited the November 2008 consultative psychological examination report by Dr. Henley and the December 2008 report by the agency's psychological consultant, Dr. Dyde. *Id.* The ALJ did not find persuasive treating physician Dr. Pock's findings in June 2010 of marked limitations and repeated episodes of decompensation. *Id.* The ALJ also found that no paragraph C criteria were satisfied, because there were neither documented episodes of decompensation of extended duration nor any indications of the existence of a residual disease process likely to cause decompensation or an inability to function independently. R. at 16.

Step four requires the ALJ to assess Mr. Burger's residual functional capacity ("RFC") in light of the medical impairments and determine if he is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Mr. Burger has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c):

> Mentally, the claimant could perform work that does not require understanding, remembering or carrying out more than simple instructions. He should not be required to have more than superficial interaction with coworkers or any interaction with the general public. The claimant should not be required to adapt to more than simple changes in a routine work setting more often than on a weekly basis.

R. at 16.

Mr. Burger had past relevant work as a post-secondary teacher, various types of merchandise salesperson, construction coordinator, driving instructor, and college faculty member. R. at 19. Based on the RFC, the ALJ found that Mr. Burger is unable to perform any past relevant work due to his mental limitations, particularly his restrictions on social functioning. *Id.*

At step five, the ALJ, after considering Mr. Burger's age, education, work experience, and RFC, found that he is capable of making a successful adjustment to other work that exists in

significant numbers in the national economy. *Id.* In making this determination, the ALJ relied on testimony at the hearing by a vocational expert ("VE"). *Id.* The VE testified that an individual with Mr. Burger's age, education, work experience, and RFC would be able to perform the requirements of jobs such as small product assembler, cleaner, or electronics worker. R. at 60–64. The ALJ thus denied Mr. Burger's claim for disability benefits. R. at 20–21.

### Standard of Review

This appeal is based upon the administrative record and the briefs submitted by the parties. When reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998) (citing *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992)). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). More than a scintilla, but less than preponderance is required. *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). Although the evidence may support two inconsistent conclusions, that "does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* The Court cannot "reweigh the evidence or substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

### Conclusions

Mr. Burger raises several issues in this appeal, which I consolidate into the following: (1) the ALJ erred in his considerations of the medical opinion, specifically that the ALJ assumed the role of a medical expert, failed to properly weigh the treating physician's opinions, and

prejudged the merits of the claim; (2) the ALJ erred in not relying on or finding credible the testimony by Mr. Burger and his wife; (3) the ALJ erred at step three in concluding that Mr. Burger did not have impairments that met or equaled a listed impairment; (4) the ALJ's RFC finding is not supported by substantial evidence; and (5) the ALJ erred at step five in determining that Mr. Burger could perform other work.  I address these arguments in turn.

### 1. ALJ's Consideration of the Medical Opinions

Mr. Burger argues that the ALJ erred in rejecting all or substantially all of Drs. Benson, Keeling, and Pock's opinions and instead "appointed himself as a medical expert, invented his own 'expert psychiatric opinion' that no mental health professional could possibly have any medical basis to express Plaintiff's 2008 mental RFC if the person first saw Plaintiff on or after 1/1/09, and relied on this in ignoring substantial evidence of record." [#9] at 28.  Mr. Burger cites a letter from Dr. Pock dated September 13, 2010 critiquing the ALJ's basis for his conclusions, which was submitted to the Appeals Council. [#9] at 29; *see* R. at 325–27.  Dr. Benson also supplied an additional letter confirming his conclusions, which Mr. Burger submitted to the Appeals Council.  R. at 328–29.

First I address any apparent challenge by Mr. Burger regarding the Appeals Council's consideration of the letters by Drs. Pock and Benson.  "[P]ursuant to 20 C.F.R. 404.970(b), . . . 'new evidence [submitted to the Appeals Council] becomes a part of the administrative record to be considered when evaluating the [Commissioner's] decision for substantial evidence.'" *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir.1994)).  The additional evidence must be "(a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision." *Id.* (internal citation and quotation marks omitted).  Even if, however, "the Appeals Council explicitly states that it considered the

7

evidence, there is no error, even if the order denying review includes no further discussion." *Martinez v. Astrue*, 389 F. App'x 866, 868–69 (10th Cir. 2010). Courts must "take the Appeals Council at its word when it declares that it has considered a matter." *Id.* (internal citation and quotation marks omitted).

Here, the Appeals Council expressly discussed the additional statements by Drs. Pock and Benson and found that they did not provide a basis for changing the ALJ's decision. R. at 2. Dr. Pock's letter to claimant's counsel is a strongly worded explanation of his opinions and of his disagreement with the ALJ's findings. The Appeals Council provided an explanation, albeit a brief one, as to why it distinguished Dr. Pock's letter. Dr. Benson's response to claimant's counsel, as the Appeals Council noted, actually is supportive of the ALJ's conclusions. Accordingly, this Court perceives no error in the Appeals Council's review of the new evidence. *See Martinez*, 389 F. App'x at 869.

Next, I address Mr. Burger's challenge to the ALJ's rejection of the opinions from Drs. Benson, Keeling, and treating source Dr. Pock. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The opinion of a treating physician is given controlling weight "as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing 20 C.F.R. § 401.1527(d)(2)).

Even if the ALJ does not give "controlling weight" to the opinion of a treating physician, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th

8

Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The ALJ, however, is not required to expressly apply each of the six relevant factors. *Id.*

If a treating physician's opinion is rejected, the ALJ must articulate "specific, legitimate reasons for his decision." *Hamlin*, 365 F.3d at 1215 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). The Tenth Circuit has consistently "held that 'a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence.'" *Griner v. Astrue*, 281 F. App'x 797, 800 (10th Cir. 2008) (quoting *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988)).

Here, all of the challenged opinions were retrospective in nature: Dr. Benson's one-time examination is dated July 2009; Dr. Keeling's one-time examination is dated January 2010; and Dr. Pock's treatment began in May 2010. Mr. Burger has provided little evidence as to his mental health or any related treatment prior to his last insured date in December 2008.

"While a treating physician may provide a retrospective diagnosis of a claimant's condition, a retrospective diagnosis without evidence of actual disability is insufficient." *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995). The timing of a physician's diagnosis is not dispositive; rather, "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status." *Potter v. Sec'y of Health & Human Services*, 905 F.2d 1346, 1348–49 (10th Cir. 1990). Furthermore, although "retrospective diagnosis and subjective testimony can be used to diagnose a physical or mental condition, this type of evidence alone cannot justify an award of benefits." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991)

The ALJ here stated adequate reasons for rejecting Drs. Benson, Keeling, and Pock's opinions when he found that their opinions did not support a finding of disability prior to the expiration of Mr. Burger's insured status. The ALJ, while noting that each opinion was

9

retrospective, did not reject those opinions solely because they were created after December 2008. R. at 18–19. Furthermore, contrary to Mr. Burger's contentions, there is no evidence that "prior to the hearing the ALJ had the intent to deny the claim based only on Dr. Henley's comments, with the hearing itself being little more than him 'going through the motions.'" [#9] at 33.

As to Dr. Benson, the ALJ rejected his opinion because it suggested, contrary to Dr. Benson's later-expressed conclusion, that being employed would actually be the most beneficial result for Mr. Burger's mental functioning. R. at 18; *see* R. at 293–94. Dr. Pock's opinion, too, was rejected as not being supported by his treatment notes. R. at 19. The ALJ reasoned: "the records of [this] source actually contain few mental status findings and fail to support the significant restrictions on work functioning indicated in the June 9, 2010, medical source statement." *Id.*; R. at 306–16.

Dr. Keeling's report was similarly rejected because her findings from her one-time examination of Mr. Burger did not "support any greater restrictions on work-related mental functioning . . . , at least not concerning the period of alleged disabling on or before December 31, 2008." R. at 19. Instead, Dr. Keeling's report reflected that

> the claimant largely seemed to complain to Dr. Keeling that he has never been able to work as an architect and instead had to take more menial jobs which he considered to be "beneath him." Whether or not the claimant likes the work he performs is not the issue in this case, however. Rather, the issue herein is whether the claimant retains a capacity for physical and mental functioning that would allow for the performance of some work activity . . . .

*Id.*; *see* R. at 322–23.

Upon a review of the record, the Court concludes that the ALJ did not err in rejecting these opinions because they were "brief, conclusory, and unsupported by medical evidence," especially as pertinent to the insured period. *Marshall v. Astrue*, 315 F. App'x 757, 761 (10th

Cir. 2009); *see also Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). Furthermore, although Dr. Pock is a treating source, the ALJ articulated sufficiently specific and legitimate reasons for rejecting his opinion. *Hamlin*, 365 F.3d at 1215. Although Mr. Burger is correct that Dr. Pock stated in his opinion that the impairments affecting Mr. Burger likely applied since he attained "early adulthood," R. at 315, the remainder of Dr. Pock's notes and explanations do not substantiate this bare conclusion. Accordingly, the ALJ appropriately rejected the opinions by Drs. Benson, Pock, and Keeling.

2. ALJ's Consideration of Testimony by Mr. Burger and his Wife

Mr. Burger argues that his testimony and the testimony of his wife at the hearing before the ALJ were "tuned out" by the ALJ, and that the ALJ provided no explanation as to why he did not credit their statements. [#9] at 33. The ALJ noted that Mr. Burger testified as to his inability to work on a sustained basis, and that he "describe[d] himself as a 'perfectionist' and said that he often feels that he is unable to do things the way he thinks they should be done." R. at 17. The testimony of Marita Burger "generally corroborated her husband's testimony" and indicated similarly that Mr. Burger needed specific instructions and was often easily distracted. *Id.* The ALJ concluded:

> After careful consideration of all the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id.* Mr. Burger argues that this "'stock decision language' fails to save the day here for Defendant as it is merely a self-serving conclusion." [#9] at 33.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to

11

credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Holbrook v. Colvin*, No. 12-5101, 2013 WL 1150298, at *3 (10th Cir. Mar. 21, 2013) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

The Tenth Circuit in *Holbrook* recently ruled on validity of the same conclusory paragraph quoted above, which the claimant there also argued was improper boilerplate. *Id.* at *4. The ALJ in *Holbrook* had discredited the claimant's testimony for several reasons, such as claimant's failure to follow prescribed treatment, claimant's exacerbation of his condition (i.e. persistently smoking despite cardiovascular and pulmonary complaints), and other medical source opinions contradicting the severity of the complaints. *Id.* The court held the boilerplate language would have been improper

> if that bare conclusion were meant to stand in for the specific findings required for a proper credibility assessment. But, as we have repeatedly explained, use of such conclusory language is problematic only when it appears in the absence of a more thorough analysis, not when, as here, the ALJ's decision referred to specific evidence in support of its conclusions.

*Id.* (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012)) (internal quotation marks omitted).

Although this Court views this boilerplate language with much wariness, the Court concludes that, in accordance with Tenth Circuit law, the ALJ here referred to specific evidence supporting his finding the testimony by Mr. Burger and his wife not credible. The ALJ cited to records that demonstrated Mr. Burger's improvement and lack of complaints while using his medication. R. at 17 (citing Denver Internal Medicine records from June 2007). The ALJ noted that by January 2010, however, Mr. Burger had stopped taking mood-stabilizing medications as advised. R. at 19 (citing Dr. Keeling's report). The ALJ found that medical reports by Drs. Henley, Benson, and Keeling showed that Mr. Burger's purported interpersonal problems were

Case 1:12-cv-00102-RBJ   Document 14   Filed 03/26/13   USDC Colorado   Page 13 of 16

less severe than he alleged, especially in light of his ability to maintain a longstanding marital relationship of 23 years. R. at 18–19. Moreover, the ALJ noted that Mr. Burger's complaints were largely regarding the *type* of work he received, not that he was unable to work as his claim alleged. R. at 19. Accordingly, even though I am not persuaded by the ALJ's use of this boilerplate paragraph regarding credibility, which unfortunately seems to be in vogue in ALJ disability opinions these days, his conclusions are sufficiently supported by his stated findings in this instance.

### 3. ALJ's Evaluation of Listed Impairments at Step Three

Mr. Burger also argues that the ALJ erred at step three when he concluded that Mr. Burger's condition did not meet or equal either the B or C criteria of listing 12.04. Mr. Burger's argument follows: "Dr. Pock placed Plaintiff squarely on the [listing of impairments] at 12.04, with both the A and B criteria met or exceeded. These opinions coupled with the treating source rule mandated Defendant's approval of the claim at Step 3." [#9] at 41.

Appendix 1 of Subpart P, 20 C.F.R. § 404, lists impairments that preclude "substantial gainful employment." *See* 20 C.F.R. § 404.1520(d). At step three, the claimant bears the burden of demonstrating that his impairments meet or medically equal all of the specified criteria contained in a particular listing. *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If the claimant does not meet or equal a listing, the ALJ must "discuss the evidence and explain why he found that [claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Even an inadequate analysis at step three, however, may constitute harmless error "when confirmed or unchallenged findings

13

made elsewhere in the ALJ's decision confirm the step three determination under review." *Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

The ALJ here provided detailed findings in concluding that Mr. Burger's condition did not meet or equal the criteria of listing 12.04. He found that "the claimant is no more than moderately limited in his activities of daily living, social functioning and ability to maintain concentration, persistence and pace" and that "[t]here are no documented episodes of decompensation, which have been of extended duration." R. at 16. In arriving at his conclusion, the ALJ relied on the consultative examination report by Dr. Henley and stated that the conclusion is consistent with the PRTF by Dr. Dyde. *Id.* The ALJ noted Dr. Pock's findings of "marked" deficits and "repeated" episodes of decompensation. *Id.* However, the ALJ discounted those findings because they "are not fully supported by the records of this source and are particularly not considered persuasive in establishing a listing-level mental impairment on or before the claimant's date last insured of December 31, 2008." *Id.* Even if this analysis were not enough, the ALJ subsequently rejected, as I discussed and confirmed above, Dr. Pock's opinions that were before him for being conclusory and not substantiating Mr. Burger's claims during the relevant insured period. *Fischer–Ross*, 431 F.3d at 733.

### 4. ALJ's RFC Finding

Mr. Burger next challenges the RFC finding as not being supported by substantial evidence. He argues that the ALJ relied mostly on Dr. Henley's opinions, which in themselves "were substantially more limited than as determined by Defendant and those much more substantial limitations were ignored." [#9] at 41.

"Although the opinion must be based on all the evidence of record, including the available medical evidence, the ALJ need not adopt any particular medical or other source

opinion on that matter." *Moses v. Astrue*, No. 10-CV-02824-REB, 2012 WL 1326672, at *5 (D. Colo. April 17, 2012). "Instead, the ALJ is required simply to 'consider and address medical source opinions' and, '[i]f the RFC assessment conflicts with an opinion from a medical source, . . . explain why the opinion was not adopted.'" *Id.* (citing Social Security Ruling 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996)).

As discussed at length above, the ALJ here did not err in rejecting the opinions of Drs. Benson, Pock, and Keeling. With this, the ALJ began his discussion by noting that "the only other medical evidence is the consultative psychological examination report of Dr. Henley." R. at 18. The ALJ pointed out that Dr. Henley diagnosed Mr. Burger with "'mild' major depressive disorder and obsessive-compulsive personality disorder with passive-aggressive features" and with a GAF of 55. *Id.*; *see* R. at 280. The ALJ acknowledged that Dr. Henley indicated some possible problems with task completion and timeliness, but no cognitive deficits. *Id.* Furthermore, while Dr. Henley noted that Mr. Burger has had difficulties working and interacting with others, his wife of twenty years was a significant exception. *Id.* The ALJ concluded that "[t]hough it is reasonable that because of the claimant's mental complaints he would be unable to interact more than superficially with coworkers and not at all with the general public, there is nothing in the report of Dr. Henley to support any greater restrictions on work-related social functioning or adaptation . . . ." R. at 18. Accordingly, I conclude that the ALJ did not err here in adopting a RFC assessment conflicting with that of Dr. Henley, because the ALJ satisfactorily discharged his duty to discuss his reasoning for doing so. *See* SSR 96-8p, 1996 WL 374184, at *7.

<u>5. ALJ's Consideration of Available Other Work at Step Five</u>

Under this subheading in Mr. Burger's briefing, he provides three befuddling sentences as argument: "Per the VE, even selected portions of Drs. Henley, Pock and Keeling's mental RFC opinions preclude all work. The full mental RFC opinions of Drs. Pock and Keeling determine even more limitations. Defendant totally, utterly and unquestionably failed to meet his Step 5 burden of proof." [#9] at 41. The Court is unable to discern what objection Mr. Burger raises at step five as to the testimony of the VE in answering the hypothetical question posed by the ALJ as based on the RFC finding. In any event, this Court has already rejected Mr. Burger's challenges to the ALJ's RFC assessment, and the hypothetical question to the VE included the same limitations contained in that assessment. Accordingly, "the VE's answer to that question provided a proper basis for the ALJ's disability decision." *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

**Order**

For the foregoing reasons, the Commissioner's decision that Mr. Burger is not disabled and entitled to benefits is AFFIRMED.

DATED this 26th day of March, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge